(109 N. W. 363.)

---

STATE FINANCE COMPANY, A CORPORATION, V. WILLIAM H. BECK, VALERIA R. MEYERS ET AL., DEFENDANTS, AND WILLIAM H. BECK AND VALERIA R. MEYERS, APPELLANTS.

Opinion filed May 15, 1906. Rehearing denied October 16, 1906.

**Champerty and Maintenance—Occasional Cutting of Hay Not Adverse Possession.**

1. The occasional cutting and removal of hay from unoccupied lands, under a permit from one claiming title adverse to the plaintiff's grantor, is not sufficient to constitute adverse possession so as to avoid plaintiff's deed for maintenance.

**Taxation — Two Tracts Assessed as One.**

2. Where two tracts of land are assessed and taxed as a single tract the entire tax proceeding is a nullity.

**Same — Woods Law.**

3. Where the same irregularity appears on the face of all the proceedings under the "Woods Law" (chapter 67, page 76, Laws 1897), the judgment in that proceeding is void.

**Same — Payment Is a Condition of Equitable Relief.**

4. Where there is an utter absence of those things which are inherently essential to a valid tax, equity cannot require payment as a condition to relief from the proceedings.

**Same — Certificate of Sale.**

5. A certificate issued in evidence of a sale under the "Woods Law" is, if valid on its face, prima facie evidence of a valid judgment and sale. Young, J., dissenting.

**Same — Certificate as Evidence.**

6. The certificate becomes conclusive evidence of a valid sale if not attacked in an action commenced within three years after the sale, unless the judgment was paid before sale or a redemption effected after sale. Young, J., dissenting.

**Same — Void Judgment — Limitations.**

7. Even if the judgment was void the sale becomes valid if not attacked within three years, unless a jurisdictional defect in the antecedent proceedings can be shown. Nind v. Myers, 109 N. W. 335, followed. Young, J., dissenting.

**Same — Jurisdictional Defects.**

8. The fact that instead of furnishing the sheriff with a certified copy of the judgment upon which to make the sale, the original judgment was used for that purpose, is not a jurisdictional defect in the proceedings. Young, J., dissenting.

**Same — Redemption — Notice of Expiration.**

9. Service of the notice of expiration of time to redeem from such a sale upon the grantees named in certain recorded tax deeds which were void on their face is not a service upon the owner required by section 1344, Rev. Codes 1899.

**Same — Tax Deed as Evidence.**

10. A tax deed void on its face is not evidence of a tax sale or of the existence of a tax.

**New Trial — Newly Discovered Evidence.**

11. Where the defect in the deed was properly pointed out by an objection at the trial, but the party offering it neglected to offer

other evidence of his alleged right as a tax-sale purchaser he cannot have a new trial to supply the absence of proof. Beggs v. Paine, 109 N. W. 322, distinguished.

### Taxation — Failure of Proof.

12. In case of such failure of proof the alleged tax title purchaser must be held to have no claim either on the land or for reimbursement from the county as on a void sale.

### Payment of Just Taxes Before Relief — Cases Overruled.

13. In an action to determine adverse claims the plaintiff will not be relieved from an alleged invalid tax sale unless he pays the face amount of all just taxes with interest from the day of sale. Previous cases on this point overruled.

### Notice of Redmption Must State Time of Expiration.

14. A notice of the expiration of the time to redeem from a tax sale under the revenue law of 1897 is fatally defective if it incorrectly states the time when the redemption right will expire.

### Same — Objection to Sale.

15. All objections to a tax sale under the revenue law of 1897 are barred unless the defect is one of those mentioned in section 1263, Rev. Codes 1899, or some other jurisdictional defect. Beggs v. Paine, 109 N. W. 322, followed.

Appeal from District Court, Stutsman county; *Glaspell, J.*

Action by the State Finance Company against William H. Beck and Valeria R. Myers. Judgment for plaintiff, and defendants appeal.

Reversed and remanded.

*Marion Conklin* and *James B. Kerr,* for appellants.

Paying taxes, leasing and the cutting and removal of hay constitute disseisin. Torey v. Bigelow, 9 N. W. 313; Booth v. Small, 25 Iowa, 177; Clement v. Perry, 34 Iowa, 564; Finn v. Wisconsin River Land Co., 40 N. W. 209; Knox v. Cleveland, 13 Wis. 245.

All defects in the sheriff's certificate are cured by the statute of limitations. Section 15, chapter 67, Laws of 1897; Henningsen v. City of Stillwater, 83 N. W. 983; Whitney v. Marshall, 17 Wis. 174; Oconto Company v. Jerrard, 46 Wis. 317.

*John Knauf, Seth Newman* and *Wicks, Paige & Lamb,* for respondents.

The possessory act must be of such a nature as to leave some enduring traces, such as cultivation, improvement, substantial en-

closure, removal of fuel, fencing of timber for the purposes of husbandry, etc.   Section 5193, Rev. Codes 1899.   Washburn v. Cutter, 17 Minn. 631; Bazille v. Murray, 40 Minn. 48; Lambert v. Stees, 47 Minn. 141; 1 Am. & Eng. Enc. Law (2d Ed.) 827.

ENGERUD, J.   This case is here for trial de novo of all the issues pursuant to an appeal by defendants.   Plaintiff, claiming to be the owner in fee, brought this action in statutory form to determine adverse claims.   Defendants, Valeria R. Myers and William ·H. Beck, answered separately, each claiming title under certain tax deeds and liens under tax-sale certificates.   Plaintiff claims title through a deed executed and delivered to it by one Kindred shortly before this action was commenced; and it is admitted that Kindred was, when he executed it, the owner of the land unless his title had been divested by certain tax sales hereinafter mentioned.   Counsel for defendants contend that the deed under which the plaintiff claims title is void under Galbraith v. Payne, 12 N. D. 164, 96 N. W. 258.   It is asserted that the plaintiff's grantor had not taken rents for one year prior to the execution of the deed, and that the land was in the adverse possession of the defendant Beck.   The facts do not sustain this contention.   The land was wild, uncultivated prairie, without improvement of any kind whatever.   Plaintiff's grantor was a nonresident.   In 1901, 1902 and 1903 his local agent at Jamestown sold to one Jennings the privilege of cutting the hay, and the latter, under this privilege, went upon the land and cut the hay in the seasons of 1901, 1902 and 1903, and removed it to his own farm.   The hay was not stacked upon the premises, and he made no improvements of any kind.   It took about 10 days to .cut and remove the hay.   Plaintiff's agent went over the land before completing the purchase.   He saw no evidence of possession, and testified that he did not know that the hay had been cut by Jennings until he heard the latter's testimony to that fact.   To constitute a disseisin of the owner of uncultivated or wild land by entry and occupation, the occupation must be of that nature and notoriety· that the owner might be presumed to know that there was a possession of the land.   A mere occasional entry to cut grass is not of that nature, and so it has been held.   Washburn v. Cutter, 17 Minn. 361 (Gil. 335) ; Bazille v. Murray, 40 Minn. 48, 51, 41 N. W. 238; Lambert v. Stees, 47 Minn. 141, 49 N. W. 662.   See, also, Bump v. Butler County (C. C.) 93 Fed. 290, 300; Buswell on Limitations & Adverse Posses-

sion, section 253; 1 Enc. of Evidence, 654, and cases cited. There was in this case but an occasional entry and for a temporary purpose. It was not such an occupation as is required to constitute adverse possession. The deed was not, therefore, within the prohibition of the statute against maintenance.

The action involves the title to three distinct tracts of land: The N. E. ¼ of the N. W. ¼ of section 13, township 139, range 63; the W. ½ of the S. E. ¼ of the same section; and the W. ½ of the E. ½ of section 25 in the same township. The first two tracts above described were assessed and taxed as a single tract although they were 80 rods apart. There was consequently no assessment of either tract, and hence there is nothing which can be held to be a tax either in law or equity. The invalidity of the proceedings as to these two tracts was apparent on the face of the certificates and deeds. The irregularity is fatal not only to the tax sales, but also to the tax itself. Roberts v. Bank, 8 N. D. 504, 79 N. W. 1049. The judgment and sale under the "Woods Law" (chapter 67, p. 76, Laws 1897), does not avail anything because the same irregularity exists in that proceeding. The citation, judgment and certificate all included the two distinct tracts under a single description. That law required each distinct tract to be separately described. Section 1331, Rev. Codes 1899. Although, under section 1339 the list of delinquent taxes filed with the clerk of court is prima facie evidence of the validity of the taxes listed, yet it is obvious it could not have that effect where the list disclosed the incurable illegality of the charge. A court of equity cannot impose as a condition of relief in this form of action the payment of the amount justly due when, as in this case, the inherent essentials to the existence of an assessment and tax are lacking. With respect to the W. ½ of the E. ½ of section 25 defendant Beck claims title by virtue of a sale on November 21, 1898, pursuant to the "Woods Law." The certificate is in the same form as that considered in Nind v. Myers (just decided) 109 N. W. 335; and is valid on its face for the reasons there stated. Following the decision in that case we hold that, by reason of the limitation provisions of section 15 of that law (section 1345, Rev. Codes 1899), the validity of the sale cannot now be questioned, and the certificate has become conclusive evidence of a valid sale. In this case, however, the land was sufficiently described in the citation published by the clerk of court, and a judgment in proper form was duly rendered.

The fact that no certified copy of the judgment was handed to the sheriff, but instead thereof he used the original judgment, we do not consider of any importance. The same irregularity existed in the sale involved in Nind v. Myers. It is plain that the legislature could have authorized the sheriff to make the sale in the manner he did without a certified copy of the judgment. The requirement that a certified copy should be provided for the sheriff was for his convenience and that of the other officers. There was nothing in that requirement designed for the protection of the landowner; and its omission could not prejudice them. Be that as it may, it was only a legislative requirement, which the legislature could dispense with, and hence all objection because of that irregularity is barred by the limitation provisions of section 1345, Rev. Codes 1899. Nind v. Myers. We hold, however, that the plaintiff's redemption right has not been terminated by proper notice. The statute requires, among other things, that the notice must be served on the owner by mail if the owner is a nonresident. Section 1344, Rev. Codes 1899. The notice was not mailed to Kindred, the then owner. It was mailed to the persons whose names appeared of record as grantees in certain prior tax deeds. Each of these tax deeds were void on their face because they were not in statutory form; and were also void for other reasons. Without deciding whether a notice to the apparent record owner would be sufficient under this statute, we are agreed that the grantee named in a recorded tax deed void on its face cannot be held to be the owner within the meaning of this statute. It is unnecessary to notice other alleged defects in the notice. The certificate is valid, but the right of redemption has not been cut off.

The tax deed to Beck, dated December 17, 1898, based on a tax sale in 1895 for the taxes of 1894 is void on its face because it names the county of Stutsman as grantor instead of the State of North Dakota. Beggs v. Paine, 109 N. W. 322. The deed, therefore, proves nothing but its own execution, and its defects were specifically pointed out by proper objection. The defendant failed to offer any proof of a tax-sale certificate or tax sale, and he must bear the consequences of his own error. The reasons for ordering a new trial in Beggs v. Paine, in a case of absence of proof, do not exist in this case. It must be held that the defendant has no claim based on the tax sale of 1895 of the particular tract in question. In the absence of any evidence of a tax sale, we cannot

find that he is the holder of a void tax-sale certificate so as to entitle him to reimbursement from the county as provided by section 84, c. 132, p. 408, Laws 1890, under which the sale was made, or section 1270, Rev. Codes 1899, which corresponds to the provision on that subject in the former law.

The tax sale to Beck dated January 11, 1901, based on a tax sale in 1897, for the tax of 1895, is void on its face for the same · reason that the preceding deed was void. It is conceded that the sale was void because the notice of sale was insufficient. There were certain irregularities in the antecedent tax proceedings, but all of them were merely irregularities in the performance of purely legislative requirements. Nothing was omitted that was inherently or constitutionally essential to the creation of a tax. In a court of equity such a tax is not wholly void even though the irregularity may be fatal to the sale. It is not shown that the tax was excessive or lacking in uniformity or otherwise unjust. No reason is assigned why the plaintiff should in equity be relieved from the payment of any portion of the tax. The plaintiff is not entitled to any equitable relief with respect to this sale until he does equity. Here is a tax which he ought to have paid. If he had done his duty by paying this just tax in proper season no sale would have been made. The county is a guarantor of the validity of the sale, and if the sale is held void, the public treasury must return the money received at the sale to the purchaser, with 7 per cent interest. If the land owner had made his objections to the sale promptly, several years of interest would have been saved to the county, and the tax could have been promptly collected. Shall the taxpaying members of the community be compelled by a court of equity to bear. the burden of increased taxation due to this landowner's refusal or failure to pay a just tax? It is no answer to say that he had the legal right to refuse payment so long as the proceedings were not in accordance with the statute. The statutory regulations which have not been strictly observed in this case were designed to insure the taxpayer ample protection against injustice or infringement of his constitutional right; and to afford him ample remedies for prompt redress in case he was wronged. Whether the statutory regulations were observed or not, in this instance, no injustice has been done the plaintiff. The rights which the statute was designed to protect have not been violated. They were not intended to be used as a means of evading his duties to the government, and of doing injustice to his neighbors.

The county is virtually a party to this action because the judgment herein rendered is a conclusive adjudication of its liability as a guarantor of the tax sale. Section 1270, Rev. Codes 1899; Paine v. Dickey County, 8 N. D. 581, 80 N. W. 770. If the sale is set aside unconditionally, even though the tax is not canceled, the county is chargeable with the accrued interest, and plaintiff gets the benefit of the use of the money without interest which he ought to have paid years before, and his taxpaying neighbors must suffer for his laches. A court of equity will not tolerate such injustice. It will grant relief only on the condition that the party seeking it does equity. The burden of each taxpayer's neglect of his obligations should be borne by himself. Hence, we shall hold that as a condition to the vacation of the sale in question the plaintiff must pay to the defendant Beck, or into court for him, the amount for which the land was sold, with interest thereon at 7 per cent per annum from the day of sale. A provisional decree should be entered giving the plaintiff the privilege of making such payment to the certificate holder or into court for him within thirty days after notice of the entry of such decree. If the plaintiff shall fail to make such payment then the final decree shall adjudge that the plaintiff is entitled to no relief from such tax sale.

We recognize the fact that this decision is in conflict with the practice heretofore prevailing as established by the decisions of this court. Those decisions were cited in Douglas v. City of Fargo, 13 N. D. 467, 101 N. W. 919. It is true, as pointed out in that case, that there is a distinction between a suit for cancellation against the county, such as that, and an action to quiet title, such as this. The difference is only in form, however. Both invoke the equity jurisdiction of the court for the same purpose, namely, the cancellation of an adverse claim. The inherent powers of the court as an equity tribunal and the general principles governing the court in equity cases are precisely the same in whatever form the questions are presented. The legislature can devise remedies and rules of procedure, but it cannot deprive the court of its constitutional jurisdiction to grant equitable relief on equitable conditions. We do not think there is anything in the statute relating to this form of action which was intended to do so. It merely prescribes the manner in which the issues may be brought before the court. It does not restrict the exercise by

the court of any of its jurisdiction according to equitable principles. We do not question the well-established rule that a tax-title purchaser buys at his peril. The doctrine of caveat emptor applies to such a sale to its full extent. However circumscribed the rights of the tax-title purchaser may be as compared with those of the landowner, the latter is not entitled to more than his legal rights. The infirmities of the tax title do not absolve the taxpayer from his obligation to do equity when he seeks equity. We agree that the tax-title purchaser is entitled only to his pound of flesh in whatever form he demands it. But confining the tax-title purchaser to his strict legal rights is one thing, and relieving the tax debtor from his just share of taxes at the expense of his neighbors is quite another. This case is a fair illustration of the injustice resulting form adhering to the rule heretofore in force in this state of not requiring payment of just taxes as a condition precedent to relief in this class of cases. The owner of the land in this case has not paid a cent of tax on this property for more than 20 years. It is not claimed that any of the taxes were excessive or unfair, or that they otherwise infringed any of the landowners' constitutional rights. The technical requirements of the law as to the procedure have not been followed with precision; and the landowner not only asks to have the tax sales set aside, but declines to pay or offer to pay a cent of the taxes which are confessedly just. Under the rule heretofore in force he was sustained in that position. The public treasury was compelled to reimburse the tax-title purchaser. It could, of course, reimpose the taxes without interest, but took the risk of another law suit as to the validity of the subsequent proceedings. The delinquent taxpayer was permitted to profit at the expense of the community.

By overturning the precedents on this question established by former decisions, we do not in any way disturb the rules by which the validity of past or future tax sales are to be tested. We disturb no rights which are justly entitled to protection. It surely cannot be claimed that those who have neglected to pay their just taxes are in any position to invoke the doctrine of stare decisis to continued immunity from their obligation to do equity when they seek equitable relief. We are satisfied that public policy necessitates this modification of former decisions, and it is further justified by the fact that it restores in this state the rule recognized and applied in other jurisdictions. In addition to the cases cited in

Douglas v. City of Fargo, see Blackman v. Arnold (Wis.) 89 N. W. 513; Adams v. Castle, 30 Conn. 404; Knox v. Dunn, 22 Kan. 683. Chapter 166, p. 232, Laws 1903, is an express legislative establishment of the rule we have been discussing. As indicated above, the court has inherent power, independent of such a statute, to do what the statute requires. The second deed to Betts of the same date as the preceding one for the taxes of 1896 is likewise void for the same reasons. The taxes, however, are merely irregular, and all that was said with respect to the taxes and tax sales for the tax of 1895 applies to this tax and tax-sale certificate, and relief should be granted on the same terms. The tax deed to Beck dated June 25, 1903, based on the tax sale of 1898 for the taxes of 1897 is void because there was not proper notice of expiration of redemption. The notice was issued more than 90 days before the expiration of the 3 years for redemption. The time to redeem, if the notice was properly served, was December 6, 1901. The notice stated that the time to redeem would expire December 26, 1901. The notice was therefore ineffective, and the deed conveyed no title. State v. Nord, 73 Minn. 1, 75 N. W. 760, 72 Am. St. Rep. 594; Kipp v. Robinson, 75 Minn. 1, 77 N. W. 414. The irregularities relied upon to avoid the sale are none of those mentioned in section 1263 for which a sale may be avoided; and none of them were. jurisdictional defects beyond the power of the legislature to cure or bar. State Finance Co. v. Mather, 109 N. W. 350, and Beggs v. Paine and Nind v. Myers, supra. The tax sale is therefore valid, but the redemption right is not cut off. The tax-sale certificate to Beck dated December 3, 1901, for the taxes of 1900 is conceded to be valid; and we think the judgment and findings sufficiently show that fact, though lacking somewhat in clearness. The tax sale to David Myers in 1892 for the taxes of 1891 was void because in the assessment roll the property is described as the "W. 2 E. 2" of the section. This must now be held to be no description, and vitiates the entire tax proceeding. The early decisions on this point have become a rule of property. Beggs v. Paine, supra.

The judgment will be reversed, and the cause remanded, with directions to enter judgment in accordance with this opinion. Appellant Beck will recover the taxable costs and disbursements of both courts from respondent.

Young, J. (dissenting in part). The following conclusions announced in the above opinion do not meet my approval: (1) That

a sheriff's certificate issued under chapter 67, p. 76, Laws 1897, is prima facie evidence of a valid judgment, (2) that it becomes conclusive evidence of a valid sale unless attacked in three years, (3) that a sale under a void judgment becomes valid unless attacked in three years, and (4) that the sale by the sheriff without a certified copy of the judgment was a mere irregularity.

As to the remaining questions I agree with the conclusions stated in the syllabus. My views upon the first three questions are set forth in a dissenting opinion in Nind v. Myers, and in Beggs v. Paine (filed herewith), 109 N. W. 322, and need not be repeated

As to the fourth question, I am of opinion that the sale by the sheriff without the certified copy of the judgment was a sale without authority of law and was void, and was not a mere irregularity, as the majority hold. It cannot be said that a sale without authority of law is not a sale without jurisdiction. Section 1341, Rev. Codes 1899 (section 11, c. 67, p. 82, Laws 1897) required the clerk of the district court, after the entry of the judgment, to deliver to the sheriff "a certified copy of such judgment written on the left-hand page of a book to be prepared by the treasurer." This certified copy of the judgment is the sheriff's authority to sell. It is his precept, and performs the same office as an execution on an ordinary judgment. The subsequent proceedings are required to be recorded upon it, and the copy is returned to the clerk of the district court. Section 1346. In my opinion, the case is not different from that in which a sheriff seizes and sells property without an execution. There being no authority of law for him to proceed in that way, his act is void. The execution is the authority for his act and without it he is without authority. The same principle should be applied when an officer attempts to sell lands for taxes. If he does not have the precept, he is without authority, and the sale is void. The following cases sustain this view: Atkins v. Hinman, 2 Gilman (Ill.) 437-448; Williams v. Underhill, 58 Ill. 137, 138; Eagan v. Connelly, 107 Ill. 458-465; Little v. Herndon, 10 Wall. (U. S.) 26, 19 L. Ed. 878; People v. Doe. 31 Cal. 220; Gilbreath v. Dilday, 152 Ill. 207, 38 N. E. 572. The sheriff's authority was special. It existed only to the extent and under the circumstances stated in the statutes. If he acted without the authority of the statute, his acts are not justified or sustained by it.

It is well settled that "the power to sell lands for taxes is a naked power, and the validity of a title derived from such a sale depends upon a strict compliance with the directions of the statute. The officer intrusted with the power of sale exercises a naked statutory and special authority, depending upon the letter of the law for its support. He must act in conformity with the law from which his power is derived; and a purchaser at such a sale is bound to know whether he has so acted. It is therefore a condition precedent to the passing of titles at such sales that all proceedings of the officers who have anything to do with the assessment and collection of the taxes or with the advertisement and sale of the property shall be in compliance with the statute authorizing the sale." Woodbridge v. State, 43 N. J. Law, 262, 270, and cases cited; also, Hopper v. Ex'rs, 16 N. J. Eq. 382; and the opinion of Chief Justice Marshall in the leading case of Williams v. Peyton, 4 Wheat. (U. S.) 77, 4 L. Ed. 518, and Early v. Doe, 16 How. (U. S.) 609, 14 L. Ed. 1079.

In my opinion there is shown an absence of authority in the sheriff to make the sale in question. And it is quite clear that authority to sell is not supplied by the curative or limitation provision of section 1345, to which the majority opinion refers. Such statutes, when applicable, cure irregularities and omissions in proceedings which are being taken by authority. But there is no ground for claiming that they give the officer authority in addition to that contained in the statute, under which he assumes to act. This must be so, for if the officer may choose his own method of procedure, or, as in this case, decide to sell without the certified copy, and thus without the authority of the statute, he is assuming to exercise legislative power which cannot be delegated. His authority to act is created by the legislature, and exists only upon the conditions named by the statute and he cannot create it himself. The fact that the legislature might have authorized him to sell upon different conditions proves nothing. It is a sufficient answer to this to say that it did not do so. The landowner can only be deprived of his property by due process of law, and he is not deprived of his property by any law, when it is not taken under the authority of a law in existence, but merely by a method of procedure which the legislature could have authorized if it had seen fit to do so.

For this reason I am of the opinion that the sale was made without jurisdiction, and should be held void.