# FARMERS SECURITY BANK OF PARK RIVER, N. D., a Corporation, v. FLORENCE B. MARTIN and Charles B. Martin.

(L.R.A. —, 150 N. W. 572.)

This opinion decides two appeals. Plaintiff foreclosed two mortgages, exercising power of foreclosure under the mortgages, because of failure of the mortgagors to pay the real estate taxes prior to delinquency, after which time plaintiff paid them, and immediately foreclosed because of such defaults. Defendants contend that, because of defective descriptions of the land in the assessment roll, the taxes are invalid and insufficient as a basis for any foreclosure proceedings. *Held:*

**Tax description — action to assail taxes — void.**

1. That the tax description would be void in an action wherein the tax could be assailed; but —

**Mortgages — land covered by mortgage — paying taxes thereon — validity of tax — assumed — equity — mortgagor — benefited by payment of taxes — estoppel to assert invalidity.**

2. A mortgagee is authorized to act on the assumption that the tax is valid where no actual notice is had that the assessment was defective; and the land being subject to taxation, the payment made by the mortgagee discharged the land from liability for taxation for that year, while otherwise it would have been subject to reassessment and retaxation; that the mortgagee had the right

to pay taxes to preserve his security; that in an action to foreclose a mortgage because of nonpayment of such taxes by the mortgagors, equity will not allow the mortgagors, to whose benefit the payment made by the mortgagee inured, to assert the invalidity of the taxes so paid in good faith to protect its security.

Opinion filed January 9, 1915.

From the judgment of the District Court of Walsh County, *Templeton,* Special Judge, dismissing these actions, plaintiff appeals.

Reversed and judgment for foreclosure ordered.

*Engerud, Holt, & Frame,* and *E. Smith-Peterson,* for appellant.

The plaintiff had the right to pay the delinquent taxes and declare the whole debt secured by the mortgage immediately due. The mortgages in express terms so provide. Such terms in the mortgages do not create a penalty or forfeiture. They merely accelerate the date of payment, and confer valuable rights on the mortgagee. Gray v. Robertson, 174 Ill. 242, 51 N. E. 248; Stanclift v. Norton, 11 Kan. 218; Hodgdon v. Davis, 6 Dak. 21, 50 N. W. 478; Washburn v. Williams, 10 Colo. App. 153, 50 Pac. 223; Northwestern Mut. L. Ins. Co. v. Allis, 23 Minn. 337; Hoodless v. Reid, 112 Ill. 105, 1 N. E. 119; Fowler v. Woodward, 26 Minn. 347, 4 N. W. 231; Plummer v. Park, 62 Neb. 665, 87 N. W. 534; National L. Ins. Co. v. Butler, 61 Neb. 449, 87 Am. St. Rep. 462, 85 N. W. 437; Condon v. Maynard, 71 Md. 601, 18 Atl. 957; Hockett v. Burns, 90 Neb. 1, 132 N. W. 718.

The mortgagors, by necessary implication, agreed to pay the taxes on the premises. They expressly gave the mortgagee the right to pay them. Bonner Springs Lodge & Sanitarium Co. v. McClelland, 59 Kan. 778, 53 Pac. 866.

The personal covenant of the mortgagors to make a refund for such payments was not necessary. Rev. Codes 1905, § 6126; Foster v. Furlong, 8 N. D. 282, 78 N. W. 986; New England Mortg. Secur. Co. v. Vader, 28 Fed. 265; Bonner Springs Lodge & Sanitarium Co. v. McClelland, 59 Kan. 778, 53 Pac. 866; Beckman v. Skaggs, 59 Cal. 544; Farwell v. Bigelow, 112 Mich. 285, 70 N. W. 579.

After such payments it was not necessary for plaintiff to notify defendants. No such notice is required by the mortgages. Ellwood v. Wolcott, 32 Kan. 526, 4 Pac. 1056; Washburn v. Williams, 10 Colo.

App. 153, 50 Pac. 223; Hoodless v. Reid, 112 Ill. 105, 1 N. E. 119; Fowler v. Woodward, 26 Minn. 347, 4 N. W. 231.

The option in the mortgages to declare the whole debt due having once been exercised, the default becomes fixed, and it cannot be cured by tender of payment after foreclosure is begun. Plummer v. Park, 62 Neb. 665, 87 N. W. 534; Rosche v. Kosmowski, 61 App. Div. 23, 70 N. Y. Supp. 216; Stanclift v. Norton, 11 Kan. 218; Hockett v. Burns, 90 Neb. 1, 132 N. W. 718.

The defendant cannot make a collateral attack upon the validity of the taxes paid by the plaintiff as a defense to this action. Power v. Larabee, 2 N. D. 141, 49 N. W. 724; Power v. Bowdle, 3 N. D. 120, 21 L.R.A. 328, 44 Am. St. Rep. 511, 54 N. W. 404; Beggs v. Paine, 15 N. D. 444, 109 N. W. 322; Weinreich v. Hensley, 121 Cal. 647, 54 Pac. 254; Windett v. Union Mut. L. Ins. Co. 144 U. S. 581, 36 L. ed. 551, 12 Sup. Ct. Rep. 751; Southard v. Dorrington, 10 Neb. 119, 4 N. W. 935.

Defendants are estopped to question the validity of these taxes in these actions. The defendants had ample opportunity to investigate the regularity and validity of the assessments and the acts of the various taxing officers, and they are presumed to know the state of these affairs. Beggs v. Paine, 15 N. D. 436, 109 N. W. 322; Nind v. Myers, 15 N. D. 400, 8 L.R.A.(N.S.) 157, 109 N. W. 335; Williams v. Hilton, 35 Me. 547, 58 Am. Dec. 729; Bates v. Peoples' Sav. & L. Asso. 42 Ohio St. 655.

Plaintiff had no actual knowledge of the defects of which complaint is made. The taxes were presumptively legal. The duplicate tax list in the treasurer's office correctly described the land. Plaintiff had the right to rely upon these records. Bates v. Peoples' Sav. & L. Asso. supra.

Such payments of taxes by mortgages to preserve their security are viewed with favor by courts of equity. Windett v. Union Mut. L. Ins. Co. 144 U. S. 581, 36 L. ed. 551, 12 Sup. Ct. Rep. 751; Southerd v. Dorrington, 10 Neb. 119, 4 N. W. 935; Weinreich v. Hensley, 121 Cal. 647, 54 Pac. 254; Williams v. Hilton, 35 Me. 547, 58 Am. Dec. 729; American Nat. Bank v. Northwestern Mut. L. Ins. Co. 32 C. C. A. 275, 60 U. S. App. 693, 89 Fed. 615; Bates v. Peoples' Sav. & L. Asso. 42 Ohio St. 655; Almy v. Hunt, 48 Ill. 45.

The taxes in question are valid taxes. The test of the validity of an assessment is, Do the assessment rolls contain sufficient data to clearly identify the lands in question? Beggs v. Paine, 15 N. D. 444, 109 N. W. 322; Nind v. Myers, 15 N. D. 403, 8 L.R.A.(N.S.) 157, 109 N. W. 335; Power v. Larabee, 2 N. D. 141, 49 N. W. 724; Power v. Bowdle, 3 N. D. 120, 21 L.R.A. 328, 44 Am. St. Rep. 511, 54 N. W. 404.

*Gray & Myers,* for respondents.

The right to accelerate the time of payment of an otherwise immatured obligation for the payment of money only, and to proceed to an immediate foreclosure of the mortgage security, can only exist by virtue of some contractual stipulation to that effect. A stipulation which provides that the whole debt may be declared due, and authorizing foreclosure upon failure to pay taxes when due, means valid taxes, —enforceable taxes. Tracy v. Wheeler, 15 N. D. 248, 6 L.R.A.(N.S.) 516, 107 N. W. 68; Wells County v. McHenry, 7 N. D. 246, 74 N. W. 241; Herriott v. Potter, 115 Iowa, 648, 89 N. W. 91.

A tax that cannot be exacted by any remedy is no tax at all. Power v. Larabee, 2 N. D. 141, 49 N. W. 724; Morrill v. Lovett, 95 Me. 165, 56 L.R.A. 634, 49 Atl. 666.

The word *"due"* has been construed to mean or imply the quality of legal enforceability. Griffith v. Speaks, 111 Ky. 149, 63 S. W. 465; Barnes v. Arnold, 45 App. Div. 314, 61 N. Y. Supp. 85; Re Ray, 2 Ben. 53, Fed. Cas. No. 11,589.

An express covenant to pay taxes means legal taxes. Scott v. Society of Russian Israelites, 59 Neb. 571, 81 N. W. 624; Clark v. Coolidge, 8 Kan. 189; Leavitt v. Bell, 55 Neb. 57, 75 N. W. 524; Hartsuff v. Hall, 58 Neb. 417, 78 N. W. 716; Vermont Loan & T. Co. v. Tetzlaff, 6 Idaho, 105, 53 Pac. 104.

In this state and in many others the rule has become a settled rule of property, that a valid assessment of land, evidenced by a record officially made, is an essential prerequisite to a valid tax. Its omission is jurisdictional, and fatal to the tax. Sheets v. Paine, 10 N. D. 106, 86 N. W. 117; Roberts v. First Nat. Bank, 8 N. D. 504, 79 N. W. 1049; Sweigle v. Gates, 9 N. D. 538, 84 N. W. 481; Re Davis, 151 Cal. 318, 121 Am. St. Rep. 105, 86 Pac. 183, 90 Pac. 711; O'Malley v. Fricke, 104 Wis. 280, 80 N. W. 436; Aldrich v. Steen, 71 Neb. 33,

98 N. W. 445, 100 N. W. 311; Chicago, B. & Q. R. Co. v. Hitchcock County, 60 Neb. 722, 84 N. W. 97; Jewett v. Iowa Land Co. 64 Minn. 531, 58 Am. St. Rep. 555, 67 N. W. 639.

The validity of a tax may be collaterally impeached; and a mortgagor is not estopped to contest such validity, in an action like the case here. 9 Enc. Pl. & Pr. 436; Leavitt v. Bell, 55 Neb. 57, 75 N. W. 524; Hartsuff v. Hall, 58 Neb. 417, 78 N. W. 716; Atwater v. West, 28 N. J. Eq. 361; De Leuw v. Neely, 71 Ill. 473.

The pretended tax here is based upon an insufficient description of the land in the assessment roll, and is void. It is indefinite and uncertain. Power v. Larabee, 2 N. D. 141, 49 N. W. 724; Power v. Bowdle, 3 N. D. 107, 21 L.R.A. 328, 44 Am. St. Rep. 511, 54 N. W. 404; Nind v. Myers, 15 N. D. 400, 8 L.R.A.(N.S.) 157, 109 N. W. 335.

By the decisions of our supreme court upon this question, a rule of property has been established in this state. Beggs v. Paine, 15 N. D. 436, 109 N. W. 322; Wright v. Jones, 23 N. D. 191, 135 N. W. 1120.

Goss, J. This opinion covers two separate appeals having the same record and involving the same issues. Complaints are in the usual form, seeking foreclosure of commission mortgages securing a portion of interest on ten-year loans, which interest matures in yearly instalments for ten years. Nine instalments were unmatured. One has been paid. Both commission mortgages are held by plaintiff. The instalment of interest due on each mortgage prior to April, 1911, had been paid, and no payment under either mortgage would fall due until the following fall of 1911. Both mortgages contain the following stipulation: "First: But if default be made in the payment of money or the interest or any part thereof or in payment of taxes on said real estate when due, then the mortgagee, its successors or assigns, may declare the whole principal sum due and payable, and this mortgage may be foreclosed at once. (2) And in case of the failure of the mortgagors to pay said taxes, then the mortgagee, its successors or assigns, may pay the same, and such sum paid shall become a part of this mortgage indebtedness, and draw interest at the same rate." The taxes falling due December 1, 1910, and delinquent March 1, 1911, on the two quarter sections covered by the two mortgages, had not been paid until

29 N. D.—18.

the mortgagees, without notice to defendants, paid them on April 19, 1911, amounting to $61.62, for which the usual county treasurer's tax receipt was delivered. These actions were begun less than a week afterwards, by service of summons and complaint, basing the right of foreclosure upon the default of the mortgagors in failing to pay these taxes. Mortgagees elected to, and did, declare the full amount of both mortgages immediately due and payable. The brief of respondents contains but two contentions: First, that the taxes were void, and, second, "that the right to accelerate time of payment of an otherwise immatured obligation, and to proceed to an immediate foreclosure of the mortgage security, can only exist by virtue of some binding contractual stipulation to that effect," and hence acceleration cannot be founded on failure to pay void taxes, under a stipulation that the mortgagors will "pay taxes when due,"—in other words that mortgagors were not in default in failing to pay the void taxes, for nonpayment of which the default is claimed as the basis of the right to accelerate interest instalments not otherwise matured.

There is no conflict in the testimony. Defendant testifies that he knew his taxes were delinquent and unpaid, and in response to inquiry as to why they were allowed to become delinquent said: "I did not have the money the 1st of March, and I went to the bank to borrow the money to pay it, and the bank explained to me where I would be a little ahead on interest by letting it go until fall and paying the penalty on it, and I came to the conclusion it would be all right. It was not because I would not pay the taxes." The bank referred to was not the plaintiff bank.

Assuming for the present that the taxes were valid, their payment on or before delinquency was stipulated for in the mortgage, and the right was there given the mortgagee, should the mortgagors default in their payment on or before delinquency, to declare "the whole principal sum due and payable" and to immediately foreclose. The mortgagee could also, at its election, pay said taxes, and reimburse itself by using its mortgage to enforce collection of the taxes on the property by foreclosure at once or at its pleasure. Real estate taxes are due December 1, and delinquent March 1. Upon delinquency in 1911 (and prior to chap. 299, Session Laws 1909, becoming effective) a penalty of 3 per cent attached in addition to the tax unpaid on March 1st, and to that

extent, with additional penalty accruing from time to time on and after March 1st, the mortgage security was gradually becoming impaired by nonpayment of taxes. Whether foreclosure could be instituted prior to March 1st need not be determined, but any time thereafter, in the absence of equitable reasons preventing it, defendants were in default under the terms of the mortgage, and because of which default the mortgage could be foreclosed under the power granted by the mortgage, and which power is valid and enforceable in equity. It has but recently been held (Doolittle v. Nurnburg, 27 N. D. 521, 147 N. W. 400) that it is not required that the mortgagee, before foreclosure and a declaration thereunder that the amount secured by the mortgage shall be immediately due and payable, shall give notice thereof to the mortgagor, or allow him an opportunity to cure his defaults. Instead, the mortgagee may declare the default without notice, the declaration by foreclosure notice being sufficient; and it follows that a court of equity in which such a foreclosure is asked, the mortgagee having complied with the law, cannot on that ground alone deem the exercise of a legal right, the declaration of default without notice, any defense in itself to the exercise of the right of foreclosure. Hence if the tax be a valid one, without any consideration of the mortgagee's right to act upon an invalid tax as constituting a cloud on the title of his security, in the absence of some defense to this foreclosure cognizable in equity, the plaintiff had a right to declare the default and to foreclose.

The validity of this tax is squarely before the court, and it must be determined whether it is void because based upon an invalid assessment. The assessment for 1910 is identical as to each tract of land. The description is as follows; *viz.:* "Cleveland township, County of Walsh, North Dakota. Name of owner, Florence B. Martin; description N. W. 4, Sec. 1., Twp. 155, Rng. 57." The trial court in its findings found "that said printed description is insufficient to identify the northwest quarter of section 1, township 155, range 57, as the property described," relying upon Power v. Larabee, 2 N. D. 141, 49 N. W. 724, and Power v. Bowdle, 3 N. D. 120, 21 L.R.A. 328, 44 Am. St. Rep. 511, 54 N. W. 404, and the many decisions of this court upon descriptions in assessments and taxation matters. The time has come when the rule must be followed under present statutes and concerning recent assessments, or a different rule announced as to taxes and assess-

ments of 1897 and subsequent years, including those in question. A brief *résumé* of the holdings of this court on descriptions by abbreviations is now in order. In the initial case, Power v. Larabee, 2 N. D. 141, 49 N. W. 724, the description was similar to the one before us, except that the figure intended to qualify the abbreviation for the quarter section was on the line, instead of above it, and was with reference to assessments for 1886–7–8. The assessment was held to be invalid as an indefinite description upon which no valid tax could be based. The attitude of the early court is clearly apparent from a casual examination of early tax cases, and that decision but reflected such attitude. A year later the court was further committed along the same line in Power v. Bowdle, 3 N. D. 107, 21 L.R.A. 328, 44 Am. St. Rep. 511, 54 N. W. 404. A glance at the page 113 of the 3d volume of our state official report shows the description there given to be identical with the one before us, so far as the placing of the figure to the upper right of the abbreviation of the description is concerned. The same description is again held void five years later, with reference to the 1887 assessments in Iowa & D. Land Co. v. Barnes County, 6 N. D. 601–603, 72 N. W. 1019, citing and following the two Power Cases. The holding is reaffirmed as to 1890 and 1894 assessments in Sheets v. Paine, 10 N. D. 103, 86 N. W. 118, and again in Lee v. Crawford, 10 N. D. 482, 88 N. W. 97, as to 1888 taxes; State Finance Co. v. Beck, 15 N. D. 374, 109 N. W. 357, as to assessment for 1891; State Finance Co. v. Mulberger, 16 N. D. 214, 125 Am. St. Rep. 650, 112 N. W. 986, for tax of 1895; State Finance Co. v. Bowdle, 16 N. D. 193, 112 N. W. 76, for taxes for 1892–3–4–6, and State Finance Co. v. Trimble, 16 N. D. 199, 112 N. W. 984, for taxes of 1895 and 1896. To make the list of similar taxation cases complete, we cite Beggs v. Paine, 15 N. D. 436, 109 N. W. 322; Hodgson v. State Finance Co. 19 N. D. 139, 122 N. W. 336; Grand Forks County v. Frederick, 16 N. D. 118, 125 Am. St. Rep. 621, 112 N. W. 839, and Wright v. Jones, 23 N. D. 191, 135 N. W. 1120.

Our conclusion, filed before rehearing was had in this case, was to the effect that chap. 126 of the Sess. Laws 1897, § 1600, Rev. Codes 1905, § 2215, Comp. Laws 1913, operated to relieve recent assessments from the rule of property announced in Power v. Bowdle, and the earlier cases decided on assessments prior to those for 1897. This

was upon the supposition that this portion of chapter 126 of the Session Laws of 1897 was new legislation. Instead, this statutory provision was earlier in force as § 94 of chapter 132 of the Session Laws of 1890, and in force from March, 1890, until repealed by the taking effect, January 1, 1896, of the Revised Codes of 1895, and during which period the rule of property had been reaffirmed as to 1890–94 assessments in Sheets v. Paine, 10 N. D. 103, 86 N. W. 117, and State Finance Co. v. Mulberger, 16 N. D. 214, 125 Am. St. Rep. 650, 112 N. W. 986, as to assessments of 1895. As this statute was in force during that period, these assessments cannot be distinguished and validated unless the rule of property in question be overruled. The assessment must be held to be one which, under direct attack by a party in a situation to assail it, would be held void.

But appellants urge that plaintiff, as mortgagee of defendants, having paid what it supposed to be a valid tax under the belief that it was a lien or cloud upon the title of its security, and when such property was legally subject to taxation, and which tax thereon is not shown to be inequitable, and where plaintiff was authorized by its mortgage contract to pay taxes and declare default for the nonpayment of same, plaintiff was placed in a position where, after such payment and exercise of power of default under the mortgage, that the mortgagors should not be heard to urge against the mortgagee the invalidity of the apparent tax thus paid. Search of the authorities lends support to such contention. A mortgagee authorized by the mortgage to pay taxes is not obliged to determine at his peril the validity of an apparent tax regularly appearing upon the proper tax records as a tax lien and cloud upon the title of the mortgage security, when such property was at all times legally subject to taxation, and where, had the proceedings been regular, the tax would have been unassailable. To hold otherwise would make every mortgagee hazard his money against the validity of the tax, while permitting the mortgagor to allow his supposed taxes to become delinquent, and thus indirectly shift upon the mortgagee the burden of suffering a lien or cloud to remain upon his mortgage security, or determine, by suit at his own expense, the validity of the tax any time the mortgagor thus sees fit to assert against him its invalidity. Had the mortgagee allowed this property to have gone to tax sale six months later, and then obtained a certificate on sale of the property,

it would have been protected, even though, as here, the taxes had been, under direct attack, void, because defendants would not have been heard to .question the tax without a tender of the amount equitably due.    Noble v. McIntosh, 23 N. D. 59, 135 N. W. 663; Tee v. Noble, 23 N. D. 225, 135 N. W. 769.   Merely because the mortgagee elected to pay the tax, instead of allowing the penalties to increase, should not place it, in equity, in a worse position than it would have been as a purchaser at a sale for said tax.   More especially is this true as here it appears that neither the mortgagors nor the mortgagee knew of the irregularities or defect in the assessment.   The mortgagors intended to pay this tax.   They did not even notify the mortgagee of their reasons for defaulting in its payment.   Had they done so, and the mortgagee have consented thereto, a different situation would be presented.   The same would hold true had the mortgagors promptly tendered the amount of the tax and penalties paid back to the mortgagee before exercise by it of its power of sale under said mortgage because of such default.   It is true that the position of the plaintiff bank as to acceleration of unearned interest by means of this foreclosure seems to be harsh.   But this is a case where equity must follow the law, and the basis for the law is in the contract, the mortgage.   To hold otherwise would announce a rule of property that might play havoc with settled property rights.

In support of the foregoing conclusions are the following authorities: Southard v. Dorrington, 10 Neb. 119, 4 N. W. 935; American Nat. Bank v. Northwestern Mut. L. Ins. Co. 32 C. C. A. 275, 60 U. S. App. 693, 89 Fed. 610; Williams v. Hilton, 35 Me. 547, 58 Am. Dec. 729; Bates v. Peoples' Sav. & L. Asso. 42 Ohio St. 673; Weinreich v. Hensley, 121 Cal. 647, 54 Pac. 254; Windett v. Union Mut. L. Ins. Co. 144 U. S. 581, 36 L. ed. 551, 12 Sup. Ct. Rep. 751.   Judge Maxwell, in Southard v. Dorrington, announces the rule in a case exactly parallel in facts with this to be:  "When the payment of taxes assessed on real estate is necessary to protect the security, the mortgagee may pay the same, and have the amount paid added to the mortgage debt as expenses necessarily incurred in protecting the security.  .  .  . But the courts look with jealousy upon the demands of the mortgagee beyond the payment of his debt, as increasing the difficulties in the way of the right to redeem.   But where the land is liable to taxation, and taxes, if legally assessed, would be a legal charge upon the same,

and there are no special circumstances showing the tax to be unjust or inequitable, a court of equity will not declare such tax void because some of the formalities necessary to make a tax deed valid have not been complied with. A party relying upon a tax deed relies upon his title, and must stand or fall upon that; but if he seeks to enjoin the collection of taxes, he must offer to do equity by paying, or offering to pay, what in justice he should pay. Nor in such case is the mortgagee required to permit the land to be sold when such sale would impair his security for the debt." And further: "In an action at law for the possession of the premises under a tax deed, the answer would be sufficient in all probability, but not in a proceeding in equity to have the taxes, which appear to have been lawful in themselves, declared null and void. In such case the party must state facts showing his right to equitable relief." And foreclosure was awarded, although the taxes would have been invalid, considered as a foundation for a tax deed. From Windett v. Union Mut. L. Ins. Co. supra, is the following: "The defendant argued that the plaintiff could not be allowed for the taxes, because they had been extinguished by the tax sales and deeds, and could not recover on the tax titles because they were void, and because equity would not enforce them. But the plaintiff did not set up the tax deeds as a ground of suit, but only as evidence of clouds upon his title, arising out of the mortgagor's own neglect to pay the taxes. It is at least doubtful, upon the evidence, whether Gage did not give notice to the tenants of the tax sales; and there is no evidence whatever of any invalidity in the taxes, the sales, or the deeds, in any other respect. In this state of things, the mortgagee was not bound to take the risk of contesting the tax titles; and the sums paid to extinguish those titles were reasonable expenses chargeable to the mortgagor by the terms of the mortgage." The California supreme court, in Weinreich v. Hensley, 121 Cal. 647, page 657, 54 Pac. 254, page 257, has this to say in a parallel case: "Whether the form of the assessment was such as would have defeated an action for its collection, or would have conferred no title upon the purchaser at a sale under a judgment for its foreclosure, is not the test of the plaintiff's right to recover the amount paid for its discharge. The assessment created at least an apparent cloud upon the title to the mortgaged premises, and to the extent of such cloud impaired the sufficiency of the security." Foreclosure was allowed for

assessments concededly void, where the mortgagee had paid the same in good faith and without actual notice of the invalidity. In the instant case, as is said in Bates v. Peoples' Sav. & L. Asso. 42 Ohio St. 655, this property was taxable for the year in question, whether legally ·taxed or not; and the payment by the mortgagee paid a tax, inasmuch as it relieved taxable property from a liability for a valid tax to which the property could, and presumptively would, have been subjected subsequently on the state discovering the invalidity of assessment for this particular year. In fact, then,. this mortgagee has paid what the state must treat as its tax, and to that extent relieved the mortgagors from a tax burden. Had the mortgagors paid this void assessment, they would have discharged a tax liability against them. The act· of the mortgagee by their authorization under the mortgage clause likewise inures to their benefit, and is to be treated as their own act in such respect. They should not be heard to deny the legality of such payment, any more than as though they themselves had paid the purported tax, and, later, in other proceedings, should attempt to collaterally repudiate both their act and the tax.

We have examined all the cases cited to the contrary, and some distinction on facts is found in all of them, not present in this case. For instance, in Scott v. Society of Russian Israelites, 59 Neb. 571, 81 N. W. 624, it appears that the property upon which the mortgagee paid taxes was not subject to general taxation, it being held for religious and charitable use. Leavitt v. Bell, 55 Neb. 57, 75 N. W. 524, and Wells County v. McHenry, 7 N. D. 246, 74 N. W. 241, were direct attacks upon the tax itself, the former in an action to foreclose a tax lien, the latter in proceedings to obtain a tax judgment against the land under the 1897 Woods law. The same is true of Morrill v. Lovett, 95 Me. 165, 56 L.R.A. 634, 49 Atl. 666, cited by respondent, where bill in equity was brought to remove a cloud upon real estate erroneously assessed as owned by a dead person, and where the. law under which the assessment was made created a personal liability secured by lien on the specific real estate. Clark v. Coolidge, 8 Kan. 189, was on a special assessment. While somewhat parallel the facts are considerably different, and the reasoning is unsatisfactory. That decision seems to have turned upon estoppel arising from the conduct of the parties. Likewise, Vermont Loan & T. Co. v. Tetzlaff, 6 Idaho, 105, 53 Pac. 104,

involving right of foreclosure of usurious mortgage, is not authority, nor is Herriott v. Potter, 115 Iowa, 648, 89 N. W. 91, involving an inheritance tax.

Our conclusion is that the mortgagee had the right to pay this tax as a tax after its delinquency and without actual notice of its invalidity, though the assessment was fatally defective; that in so doing it discharged the land from a taxation liability, and to that extent relieved and preserved the security therefrom; that though the assessment might be held void for indefiniteness of description of property in an action wherein the validity of the tax could be raised, it would be inequitable to permit the mortgagors here to assert that the tax is invalid in this action; that defendants were in default under the terms of the mortgages, and plaintiff mortgagee is entitled to a judgment of foreclosure accordingly.